IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING


**KENNETH CARTER,**

        Plaintiff,

**v.**                                  **Civil Action No. 5:12-CV-72**
                                              **(BAILEY)**

**ALLSTATE INSURANCE COMPANY,**
**and LARRY D. POYNTER, individually,**

        Defendants.

**MEMORANDUM OPINION AND ORDER**
**DENYING REMAND AND STRIKING CLASS ACTION ALLEGATIONS**

Pending before the Court are the defendants' Motion to Strike Class Action
Allegations [Doc. 7], filed June 7, 2012, and the plaintiff's Motion to Remand [Doc. 10], filed
June 21, 2012.  These motions have been fully briefed and are now ripe for decision.
Having reviewed the record and considered the arguments of the parties, this Court
concludes that the plaintiff's motion should be **DENIED** and the defendants' motion should
be **GRANTED**.

**BACKGROUND**

**I.**    **Factual Allegations**

    **A.**    **Putative Class Representative**

On December 29, 1990, plaintiff Kenneth Carter sustained serious and permanent
injuries in a motor vehicle accident caused by David Owens in McDowell County, West
Virginia.  At the time of the accident, Owens was an underinsured motorist operating an

1

underinsured vehicle as defined by the laws of the State of West Virginia and the insurance policy issued to Carter by Allstate Insurance Company ("Allstate").  Carter's subsequent bodily injury claim exhausted the $20,000 bodily injury coverage limit contained in Owens' insurance policy issued by Dairyland Insurance Company.

Carter's Allstate policy provided coverage on three separate vehicles and included $50,000 per person and $100,000 per occurrence in underinsured motorist bodily injury coverage benefits on each of the three vehicles.  The policy did not contain language prohibiting Carter from "stacking" these coverage benefits, effectively allowing Carter to triple his coverage.  In fact, Allstate had represented to the Office of the Insurance Commissioner of the State of West Virginia that the insurer allowed claimants to stack underinsured motorist coverage included in multi-vehicle policies issued by Allstate in West Virginia on or before December 16, 1991.  Nevertheless, Allstate and one of its Kanawha County, West Virginia, adjusters named Larry D. Poynter failed to disclose or willfully concealed this availability of stacking the coverages and instead told Carter that the underinsured motorist coverage available to him was $50,000. Relying on this representation, Carter subsequently accepted $43,500 as a full and final settlement of his underinsured motorist coverage claim.

**B.   Putative Class**

Carter alleges that he is one of "hundreds" of Allstate insureds that compose a state-wide putative class defined as:

a.   Persons who presented claims for underinsured motorist coverage benefits arising prior to July 12, 1992 under Allstate policies of insurance issued in the State of West Virginia between the dates of

2

       June 28, 1982 and July 12, 1992 providing underinsured motorist coverage benefits on more than one motor vehicle; and

b.     Who were not employees of Allstate at the time the claim was presented; and

c.     Who are not employees of Plaintiff's counsel or the Judge of this Court.

([Doc. 3-3] at ¶ 51).  According to Carter, common issues of fact and law among the putative class members include:

A.     Whether policies of insurance issued by Allstate in the State of West Virginia between the dates of June 28, 1982 and July 12, 1992 providing underinsured motorist coverage on more than one motor vehicle contained legally enforceable language prohibiting the stacking of underinsured motorist coverage benefits;

B.     If [so], whether Allstate waived its right to seek enforcement of any anti-stacking language included in the policies by its affirmative representations to the West Virginia Insurance Commissioner;

C.     The legal obligations of Allstate to the Class Members;

D.     Whether the nature and/or extent of underinsured motorist damages claimed or ultimately recovered or recoverable impacts the amount of available underinsured motorist coverage which must be disclosed to claimants under West Virginia law;

E.     Whether Allstate breached its contract of insurance with Class Members by failing to disclose the availability of stacked limits of underinsured motorist coverage limits to compensate class members for damages caused by an underinsured motorist;

F.     Whether Allstate breached its contract of insurance with Class Members by willfully concealing the availability of stacked limits of underinsured motorist coverage limits to compensate class members

for damages caused by an underinsured motorist;

G.    Whether Allstate violated the implied covenant of good faith and fair dealing with Class Members by failing to disclose the availability of stacked limits of underinsured motorist coverage limits to compensate class members for damages caused by an underinsured motorist;

H.    Whether Allstate violated the implied covenant of good faith and fair dealing with Class Members by willfully concealing the availability of stacked limits of underinsured motorist coverage limits to compensate Class Members for damages caused by an underinsured motorist;

I.    Whether Allstate violated W.Va. Code § 33-11-1, *et seq.* by failing to disclose the availability of stacked limits of underinsured motorist coverage limits to compensate Class Members for damages caused by an underinsured motorist;

J.    Whether Allstate violated W.Va. Code § 33-11-1, *et seq.* by willfully concealing the availability of stacked limits of underinsured motorist coverage limits to compensate Class Members for damages caused by an underinsured motorist;

K.    Whether Allstate violated 114 W.Va. C.S.R. 14-4.1 (1981) by failing to disclose the availability of stacked limits of underinsured motorist coverage limits to compensate Class Members for damages caused by an underinsured motorist;

L.    Whether Allstate violated 114 W.Va. C.S.R. 14-4.1 (1981) by willfully concealing the availability of stacked limits of underinsured motorist coverage limits to compensate Class Members for damages caused by an underinsured motorist;

M.    Whether Allstate's conduct warrants the imposition of punitive damages; and

N.    Whether the Members of the Class are entitled to recover damages as a result of Allstate's conduct and the proper measure of those damages.

(Id. at ¶ 55).  Finally, Carter alleges that "[a] class action is superior to other methods of adjudication for the fair and efficient adjudication of this controversy because [these] common questions of law and fact . . . predominate over questions affecting only individual class members."  (Id. at ¶ 66).

## II.   <u>Procedural History</u>

### A.   *Falls* Action

On September 25, 2000, Cindy Jo Falls sued Allstate and Poynter in the Circuit Court of Marshall County, West Virginia, after Allstate denied Falls' claim for stacked underinsured motorist coverage.  The Complaint alleged that this denial of stacked coverage violated the West Virginia Unfair Settlement Practices Act and the attendant regulations promulgated by the Office of the West Virginia Insurance Commissioner, and breached the covenant of good faith and fair dealing implied in Falls' insurance policy.  The Complaint sought compensatory and punitive damages.

On January 13, 2004, Falls filed an Amended Complaint [Doc. 7-6] containing class allegations and adding claims for fraud, breach of contract, intentional infliction of emotional distress, and unjust enrichment.  Falls alleged a state-wide putative class defined as:

A.   Insureds under Allstate policies of automobile insurance issued in West Virginia who had claims for underinsured motorist benefits pending on any date on or after July 20th, 1990, where the applicable Allstate policy included underinsured motorist coverage on more than one vehicle and Allstate's "AU69-3" or "AU69-2" underinsured motorist coverage endorsement;

B.   The insured must have presented a claim for underinsurance to Allstate to be a Member of the Class;

5

C.      Excluded from this Class are employees of Allstate, its officers or
        directors, Plaintiff's counsel and the Judge of this Court.

([Doc. 7-6] at ¶ 57).  The parties agreed to refine this class definition for pre-certification

discovery as follows:

> Persons who (a) gave notification . . . of an underinsured motor vehicle bodily
> injury (BIUIM) claim, (b) under a policy of insurance issued by Allstate
> Insurance Company with the AU69-2 or AU69-3 endorsement, (c) within the
> State of West Virginia, (d) with underinsured motor vehicle bodily injury
> coverage on more than one vehicle, (e) received payment of UIM benefits
> equal to at least seventy percent (70%) of the BIUIM limit for a single vehicle
> and (f) to whom the availability of stacking of UIM coverage was not
> disclosed by Allstate.

([Doc. 3-6] at 1-2).  The parties also agreed to define the class period as "roughly

contemporaneous with June 28, 1982 through January 12, 1992– which is the period during

which the AU69-3 Endorsement was utilized in the State of West Virginia."  (Id. at 3).

Falls alleged that common issues of fact and law among the putative class members

included:

A.      The construction of the AU69-2 and AU69-3 endorsement[s];

B.      The legal obligations of Allstate to the Class Members;

C.      Whether Allstate breached its contract and the implied covenant of
        good faith and fair dealing with the Plaintiff and the Class Members by
        failing to advise them of pertinent coverages;

D.      Whether Allstate breached its contract and the implied covenant of
        good faith and fair dealing with the Plaintiff and the Class Members by
        willfully concealing pertinent coverages from them;

E.      Whether Allstate and Poynter's conduct violated West Virginia's Unfair

6

Claims Settlement Practices Act; and the West Virginia Unfair Trade Practices Act;

F.    Whether the Defendants' conduct toward the Plaintiff and the Class Members constitutes Fraud;

G.    Whether the Defendants' conduct toward the Plaintiff and the Class Members was so extreme and outrageous that no reasonable person could be expected to endure it;

H.    Whether the Defendants knew or should have known that its conduct was likely to cause severe emotional distress to the Plaintiff and the Class Members;

I.    Whether Allstate has been unjustly enriched by its willful concealment of available coverages from the Plaintiff and the Class Members; and

J.    Whether the Plaintiff and the Members of the Class have sustained damages and the proper measure of those damages.

([Doc. 7-6] at ¶ 60).  Falls alleged that these questions would "predominate over any individual issues."  (Id.).

During discovery, counsel for Falls produced two spreadsheets that set forth what he characterized as allegedly "Stolen Coverage."  Each spreadsheet, developed using the claims Allstate identified as part of the pre-certification discovery, estimated that about eighty putative class members lost coverage benefits of approximately $5.8 million.  See Doc. 3-15.

On December 17, 2007, Falls moved the circuit court for class certification.  After a hearing, the circuit court denied Falls' motion on December 29, 2008.  The circuit court cited as one of the primary reasons for its ruling that individual issues predominated:

There is no administrative mechanism available for this Court to provide a class-wide remedy given the unique factual underpinnings for this Court to determine if, in fact, each putative class member was potentially entitled to "stacked" coverage as a matter of law.  Moreover, even if the potential availability of "stacking" was clarified for each of the claims at issues, for each respective point in time given the evolving nature of "stacking" law, it would still be necessary for this Court to identify from the overall group those persons, if any, who acted or failed to act based on Allstate's alleged misrepresentation.

This is particularly significant with respect to the selection criteria proposed by the Plaintiff of putative class members who settled their underinsured motorist claim for seventy percent (70%) of the single vehicle BIUIM limit, therefore not exhausting available coverage, without the need to even consider the issue of "stacking."  This factor was adopted by the parties for the limited purpose of pre-certification discovery based on the Plaintiff's contention that settlement at that arbitrary point may have been precipitated by an improper actual or anticipated denial of "stacking."  Such a determination in the context of class certification would, however, depend upon subjective criteria that would necessitate an exercise in judicial speculation as to the individual reasoning of each settling claimant and in most cases, his or her attorney.

Furthermore, it would be necessary to conduct a plethora of "mini-trials to ascertain if each of the putative class members actually sustained underlying tort damages of sufficient magnitude to establish a claim valued in excess of single vehicle limits, as well as the applicability and scope of derivative damages resulting from this alleged misrepresentation.

. . .

8

> Given the need for a highly individualized analysis to establish even the identity of putative class members, this Court concludes as a matter of law that the proposed class is neither adequately defined nor sufficiently ascertainable.

([Doc. 7-7] at ¶¶ 11-13, 15).  Subsequent to this ruling, counsel for Falls filed this action and five additional individual actions based upon Allstate's denial of claims for "stacking" coverage in the Circuit Court of Marshall County, which this Court will reference herein as: (1) the *O'Brien* action, (2) the *Lee* action, (3) the *Ash* action, (4) the *Marple* action, and (5) the *Cumptan* action.  The *Lee*, *Ash*, and *Marple* actions remain unresolved.

On November 30, 2010, counsel for Carter, Lee, Ash, and Marple made a demand upon Allstate to settle Carter's individual action for $250,000, the *Marple* action for $6 million, the *Lee* action for $1.2 million, while advising that $650,000 would "be recommended" as a potential settlement of the *Ash* action.  This equaled an aggregate demand of $8.1 million.

### B.    Instant Action

On March 15, 2010, Carter sued Allstate and Poynter in the Circuit Court of Marshall County, alleging that the defendants failed to disclose or willfully concealed the availability of "stacked" coverage and claiming, *inter alia*, that this conduct violated the West Virginia Unfair Trade Practices Act [Doc. 3].  On April 5, 2010, Allstate removed this action to this Court arguing that Carter had fraudulently joined Poynter and consequently invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332.  On December 1, 2010, the Honorable Frederick P. Stamp, Jr., rejected Allstate's fraudulent joinder contention, found complete diversity lacking, and remanded this matter back to the circuit court [Doc. 3-2].

9

On May 17, 2012, the circuit court granted Carter leave to file the Amended Complaint containing the class allegations at issue and outlined above [Doc. 3-4].  On May 23, 2012, Allstate again removed this action to this Court, this time invoking jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA") [Doc. 3].

On June 7, 2012, the defendants filed the instant Motion to Strike Class Action Allegations [Doc. 7], arguing that the same deficiencies identified in Falls' class action allegations are apparent in Carter's allegations.[1]  More specifically, the defendants argue that it appears from Carter's allegations that individual issues substantially outweigh any conceivable issues that may be common to the putative class and that Carter's claims are not typical to the putative class.  In response, Carter states that he "does not oppose the striking of the class allegations set forth in his Amended Complaint and joins this Motion." ([Doc. 11] at 1).  In reply, the defendants argue that, "[b]ased on Plaintiff's express concession . . . , this Court should, without more, grant [their] Motion and strike the class action allegations from Plaintiff's Amended Complaint."  ([Doc. 16] at 1).

On June 21, 2012, Carter filed the instant Motion to Remand [Doc. 12], arguing that this matter should be remanded for one of three independent reasons.  First, Carter contends that the defendants have failed to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million.  Second, Carter asserts that the local controversy exception to CAFA jurisdiction applies.  Third, Carter argues that the defendants' motion to strike his class action allegations divests this Court of jurisdiction.

---

[1]The same day, the defendants also moved to dismiss Carter's individual claims as, *inter alia*, untimely [Doc. 6].  That motion has since been fully briefed and is now ripe for decision.  However, this Court has resolved to accord that motion separate consideration in a subsequent decision to be rendered in due course.

10

In response, the defendants contend that this Court possesses proper CAFA jurisdiction [Doc. 15].  First, the defendants cite the *Falls* action spreadsheets and the settlement demands which Carter's counsel made in the subsequent individual actions as establishing that the amount in controversy more likely than not exceeds $5 million.  Second, the defendants argue that the local controversy exception is inapplicable because Poynter, though a West Virginia citizen, is not a defendant from who significant relief is sought and whose alleged conduct forms a significant basis for the class claims.  Third, the defendants assert that their motion to strike Carter's class action allegations does not divest this Court of jurisdiction because jurisdiction is determined at the time of removal.

In reply, Carter attempts to counter each of the defendants' arguments in opposition to remand [Doc. 17].  First, Carter argues that the defendants' amount in controversy analysis is speculative to the extent that it relies upon the *Falls* action, which Carter contends is distinct from the instant action.  Second, Carter asserts that he should be granted leave to amend before the Court considers the applicability of the local controversy exception.  Third, Carter argues that the post-removal striking of class action allegations should be the exception to the time-of-removal rule.  Alternatively, Carter claims that the striking of his class action allegations implies that they were frivolous, and thus, that CAFA jurisdiction had been absent from the outset.

**DISCUSSION**

I.      **Applicable Standards**

      A.      **Motion to Remand**

"CAFA authorizes the removal of any civil action which is a class action in which (1) 'the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs,' 28 U.S.C. § 1332(d)(2); (2) 'any member of a class of plaintiffs is a citizen of a State different from any defendant,' id. § 1332(d)(2)(A); and (3) there are 100 or more plaintiff class members, id. § 1332(d)(5)(B)." *West Virginia ex rel. McGraw v. CVS Pharm., Inc.*, 646 F.3d 169, 174 (4th Cir. 2011).[2] The removing party must prove these three elements by a preponderance of the evidence. *See Johnson v. Advance Am.*, 549 F.3d 932, 935 (4th Cir. 2008).

In the event these three elements are satisfied, CAFA nonetheless requires a district court to decline to exercise jurisdiction over certain class actions.  For example, a district court shall decline to exercise jurisdiction over class actions in which:  (1) greater than two-thirds of the members of all proposed plaintiff classes– in the aggregate– are citizens of the State in which the action was originally filed; (2) at least one defendant from whom significant relief is sought, and whose alleged conduct forms a significant basis for the class claims, is a citizen of the State in which the action was commenced; (3) the principal alleged injuries were incurred in the State in which the action was filed; and (4) during the

---

[2]CAFA "defines 'class action' to mean any civil action filed under rule 23 of the Federal Rules of Civil procedure or *similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action*.' Id. § 1332(d)(1)(B)." ***McGraw***, 646 F.3d at 174 (emphasis in original). West Virginia Civil Rule of Procedure 23 satisfies the emphasized "similarity" requirement.  *See **Id.***

three years prior to filing, no other class action asserting similar factual allegations was filed.  28 U.S.C. § 1332(d)(4)(A).  This is commonly known as the "local controversy" exception.  *See* **Eakins v. Pella Corp.**, 455 F.Supp.2d 450, 451 (E.D.N.C. 2006).  A plaintiff seeking remand pursuant to a CAFA exception must prove by a preponderance of the evidence that the particular exception applies.  *See* **Johnson**, 549 F.3d at 934-935.

Finally, 28 U.S.C. § 1453(b) "eliminates at least three of the traditional limitations on removal: (1) the rule that, in a diversity case, a defendant cannot remove a case from its home forum, § 1441(b); (2) the rule that a defendant cannot remove a diversity case once it has been pending in state court for more than a year, § 1446(b); and (3) the rule that all defendants must consent to removal . . .."  **Palisades Collections LLC v. Shorts**, 552 F.3d 327, 331 (4th Cir. 2008) (internal citations omitted).

### B.    Motion to Strike Class Action Allegations

Federal Rule of Civil Procedure 12(f) allows a district court to strike, either on proper motion by a party or on its own initiative, any redundant, immaterial, impertinent, or scandalous matter in any pleading.  Federal Rule of Civil Procedure 23(d)(1)(D) explains that, "[i]n conducting an action under this rule, the court may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."

To assert claims on behalf of a class, a plaintiff must clear three sets of procedural hurdles.  First, a plaintiff must establish that a class exists and is ascertainable.  This requires that the plaintiff define the class in objective terms and that the class be administratively feasible to identify who falls within the class.  *See* **Kirkman v. N.C. R.R.**

*Co.*, 220 F.R.D. 49, 53 (M.D.N.C. 2004).  Second, a plaintiff must satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 23(a); ***Gunnells v. Healthplan Servs., Inc.*** 348 F.3d 417, 423 (4th Cir. 2003).  Finally, class certification is appropriate only if the lawsuit falls within one of the three categories set forth in Rule 23(b).  *See **Gunnells***, 348 F.3d at 423. Where the inability to maintain the suit as a class action is apparent from the face of the complaint, a court may dismiss the class allegations on the pleadings.  *See e.g., **John v. Nat'l Sec. Fire & Cas. Co.***, 501 F.3d 443, 445 (5th Cir. 2007).  The court may issue such an order upon a motion by the defendants, regardless of whether the plaintiff has moved for class certification.  ***Vinole v. Countrywide Home Loans, Inc.***, 571 F.3d 935-40 (9th Cir. 2009).

**II.    Analysis**

**A.    Motion to Remand**

Carter offers three independent arguments in support of his motion to remand, namely: (1) the defendants have failed to establish the requisite amount in controversy, (2) the local controversy exception applies, and (3) the defendants' motion to strike his class allegations divests this Court of jurisdiction.  This Court will now address each argument in turn.

**1.    Amount in Controversy**

As his first basis for remand, Carter argues that the defendants have failed to prove beyond a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million.  This Court disagrees.

Despite Carter's assertions to the contrary, this Court finds that the spreadsheets his counsel prepared in the ***Falls*** action are relevant to determining the amount that is more likely than not in controversy here.  Carter cannot reasonably dispute that this action is substantially identical to the ***Falls*** action.  This action arises, as did the ***Falls*** action, from Allstate's alleged failure to acknowledge that its claimants could stack underinsured motorist bodily injury coverage benefits.   The putative class period alleged here substantially mirrors the period alleged in ***Falls***.  The class definitions depart company only in a way that actually increases the likelihood that the requisite amount is in controversy. Specifically, by not limiting the class to those claimants who settled for less than seventy percent of the single-vehicle coverage, Carter's putative class is defined more broadly and thus contemplates a larger putative class.

Therefore, the ***Falls*** spreadsheets, which estimated compensatory damages in excess of $5.8 million for approximately 80 putative class members, persuade this Court to conclude that this putative class action, which is broader in scope, more likely than not satisfies the CAFA amount in controversy requirement of $5 million, especially when Carter's claim for punitive damages is also considered.  Accordingly, because Carter does not dispute the remaining requirements for CAFA jurisdiction, i.e., the existence of minimal diversity and at least 100 putative class members, this Court concludes that it possesses subject matter jurisdiction pursuant to CAFA and should proceed accordingly unless Carter can establish the applicability of a CAFA exception.

### 2.      Local Controversy Exception

Carter contends that the local controversy exception more likely than not applies here, requiring this Court to decline to exercise jurisdiction pursuant to CAFA.  The only element of this exception in dispute is whether Poynter, a West Virginia claims adjuster for Allstate, qualifies as a significant local defendant.  In other words, Carter must establish by a preponderance of the evidence that Poynter is a local defendant from whom significant relief is sought and whose alleged conduct forms a significant basis of the class claims asserted.  As explained below, this Court is unconvinced that Carter has made this showing.

### i.      Significant Relief

As an initial matter, this Court questions whether Congress even envisioned that significant relief could be sought from a local claims adjuster for purposes of the local controversy exception.

The term "significant relief" is ambiguous and has yet to be interpreted by the Fourth Circuit.  As such, the term should be interpreted in light of legislative history.  The statute's Committee Report provides, in pertinent part:

> In a consumer fraud case alleging that an insurance company incorporated and based in another state misrepresented its policies, a local agent of the company named as a defendant presumably would not fit this criteria.  He or she probably would have had contact with only some of the purported class members and thus would not be a person from whom significant relief would be sought by the plaintiff class viewed as a whole.  Obviously, from a relief standpoint, the real demand of the full class in terms of seeking significant relief would be on the insurance company itself.

16

S. Rep. No. 109-14, at 40.  Based upon this passage, this Court finds it unlikely from the outset that Congress intended for Carter's joinder of Poynter to qualify as seeking significant relief from a local defendant.

Even assuming Congress intended that the local controversy exception apply to local claims adjusters, this Court nonetheless finds that application is unwarranted here. Again, the Fourth Circuit has not interpreted the term "significant relief."  The Eleventh Circuit, however, has held that "a class seeks 'significant relief' against a defendant when the relief sought against the defendant is a significant portion of the entire relief sought." *Evans v. Walter Indus.*, 449 F.3d 1159, 1167 (11th Cir. 2006) (citation omitted).  The court in *Evans* further explained that the significant relief test requires a comparative analysis that "includes not only an assessment of how many members of the class were harmed by the defendant's actions, but also a comparison of the relief sought between all defendants and each defendant's ability to pay a potential judgment." *Id.* (citation omitted).

Here, Carter has not attempted to provide this Court with the information necessary to measure the relief sought against Poynter against the total relief sought.  Instead, Carter apparently seeks to hold Allstate and Poynter jointly and severally liable based upon his allegation that the defendants formed and acted pursuant to a civil conspiracy.  This theory, however, is quickly foreclosed by the intra-corporate conspiracy doctrine, which holds that "a corporation cannot conspire with its own officers while the officers are acting in their official capacity." *United States ex. rel. DRC, Inc. v. Custer Battles, LLC*, 376 F.Supp.2d 617, 651 (E.D. Va. 2005) (quotation and footnote omitted).  "The Fourth Circuit has recognized two exceptions to the general rule that agents of a principal cannot conspire

with one another or the principal: [1] the so-called 'independent personal stake' exception, and [2] where the corporate agents are alleged to have acted outside the normal course of their corporate duties – the 'unauthorized acts' exception." ***United States v. Gwinn***, 2008 WL 867927, *25 (S.D. W.Va. Mar. 31, 2008) (citation omitted).  Carter has failed to demonstrate that either exception applies here.

For these reasons, this Court concludes that Carter has failed to establish that he seeks "significant relief" from Poynter, as contemplated in the local controversy exception to the exercise of CAFA jurisdiction.  *Accord **Martin v. State Farm Mut. Auto. Ins. Co.***, 2010 WL 3259418, *7 (S.D. W.Va. Aug. 18, 2010).

### ii.    Significant Basis

Again, this Court begins by questioning whether Congress intended that the term "significant basis" apply to a local claims adjuster:

> Similarly, the agent presumably would not be a person whose alleged conduct forms a significant basis for the claims asserted.  At most, that agent would have been an isolated role payer in the alleged scheme implemented by the insurance company.

S. Rep. No. 109-14, at 40.  Based upon this passage, this Court finds it unlikely from the start that Congress intended for Poynter's conduct, as alleged by Carter, to be considered as forming a significant basis for the class claims asserted.

Even assuming Congress intended otherwise, this Court concludes that application of the local controversy exception on this basis is inappropriate here.  The term "significant basis" has yet to be interpreted by the Fourth Circuit.  The Third Circuit, however, has held that this component of the local controversy exception requires that there be "at least one

local defendant whose alleged conduct forms a significant basis for *all* the claims asserted in the action." *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 155 (3d Cir. 2009) (emphasis added). In this case, Carter does not dispute that Poynter was not the claims adjuster for some of the claimants which would qualify under the class definition because he did not become a manager until 1987.

For these reasons, this Court concludes that Carter has failed to establish that Poynter's alleged conduct formed a "significant basis" for *all* the class claims asserted in this action, as required by the local controversy exception. *Accord Martin*, 2010 WL 3259418 at *8. Accordingly, this Court concludes that the local controversy exception is inapplicable and thus that this Court is not required to decline to exercise its jurisdiction under CAFA.[3]

### 3.    Divestiture of Jurisdiction

Finally, Carter argues that the defendants' Motion to Strike Class Action Allegations divests this Court of its jurisdiction under CAFA. This Court disagrees.

"The well-established general rule is that jurisdiction is determined at the time of removal, and nothing filed after removal affects jurisdiction." *In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 380 (7th Cir. 2010) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938)). Based upon this time-of-removal rule, five United States Courts of Appeals to have addressed the issue have held that a post-removal denial of class certification does not divest a district court of CAFA jurisdiction that was present

---

[3]The difference in pleading requirements between the state and federal courts played no role this conclusion. Instead, this Court finds that it is relatively clear as a matter of law that the local controversy exception does not apply here.

19

upon removal.  *See* **Vega v. T-Mobile USA, Inc.**, 564 F.3d 1256, 1268 n. 12 (11th Cir.

2009); **Cunningham Charter Corp. v. LearJet, Inc.**, 592 F.3d 805, 806 (7th Cir. 2010);

**United Steel v. Shell Oil Co.**, 602 F.3d 1087, 1091-92 (9th Cir. 2010); **Buetow v. A.L.S.**

**Enters., Inc.**, 650 F.3d 1178, 1182 n. 2 (8th Cir. 2011); **Metz v. Unizan Bank**, 649 F.3d

492, 500 (6th Cir. 2011); *see also* **Levitt v. Fax.com**, 2007 WL 3169078, *7 (D. Md. May

25, 2007).[4] Relying on the same rule, the Seventh Circuit has also held that a post-removal

amendment to eliminate class allegations does not divest a district court of previously

possessed CAFA jurisdiction.  *See* **In re Burlington**, 606 F.3d at 381 ("Given our decision

in **Cunningham**, the limited question this appeal presents is whether CAFA jurisdiction also

continues when the post-removal change is not the district court's denial of class

certification but is instead the plaintiffs' decision not to pursue class certification. The district

court treated the two situations as indistinguishable, and we agree.").

No federal appellate court has addressed the specific issue presented here, i.e.,

whether a defendant's post-removal motion to strike class action allegations divests a

district court of its CAFA jurisdiction.  At least one district court has had such an opportunity

and applied the same analysis to deny remand:

> Additionally, Plaintiffs say that, because Defendants have moved to strike the
> class allegations, this Court should not allow Defendants to rely on CAFA to
> support jurisdiction.  Plaintiffs continue that, the Court should therefore
> remand this action because Defendants cannot support jurisdiction under the

---

[4]This Court is aware that three of these federal appellate courts recognized that the time-of-removal rule does not preclude removal when the jurisdictional allegations were frivolous from the start.  *See* **Cunningham**, 592 F.3d at 807; **United Steel**, 602 F.3d at 1092 n. 3; **Metz**, 649 F.3d at 501 n. 4.  While potentially unwise, however, this Court is unconvinced that Carter's class action allegations were frivolous from the start.

traditional, strict diversity requirements of § 1332(a)(1).   28 U.S.C. § 1332(a)(1).  As noted above, this Court judges the proprietary of removal on the state of the world at the time of removal.  At the time of removal, Plaintiffs' claim satisfied the requirements for CAFA jurisdiction.  The Defendants' post-removal arguments do not change the removal analysis.

*Faktor v. Lifestyle Lift*, 2009 WL 1107908, *3 (N.D. Ohio Apr. 23, 2009).[5]

Upon careful consideration, this Court agrees with the court in *Faktor* and finds no reason to depart from the time-of-removal rule in this case.  Instead, applying that well established rule, this Court holds that the defendants' Motion to Strike Class Action Allegations does not divest this Court of the jurisdiction it had under CAFA at the time of removal, as determined above.

Accordingly, this Court concludes that Carter's Motion to Remand should be **DENIED**.

### B.    Motion to Strike Class Action Allegations

In responding to the defendants' Motion to Strike Class Action Allegations, Carter states that he "does not oppose the striking of the class allegations set forth in his Amended Complaint and joins this Motion." ([Doc. 11] at 1).  Based upon Carter's consent, this Court concludes that the defendants' Motion to Strike Class Action Allegations should be **GRANTED**.[6]

---

[5]This Court is aware that at least one other district court has addressed the same issue and ruled that remand was required.  *See* *Adams v. Luxottica U.S. Holdings Corp.*, 2009 WL 7401970, *7 (C.D. Cal. July 24, 2009).  However, this Court questions the vitality of this decision after the Ninth Circuit's subsequent opinion in *United Steel*, as cited above.

[6]To the extent that this consent was conditioned upon remand, this Court nevertheless finds that the class action allegations should be stricken.  In so finding, this

## CONCLUSION

For the foregoing reasons, this Court concludes that the plaintiff's Motion to Remand **[Doc. 10]** should be, and hereby is, **DENIED**.  In addition, this Court concludes that the defendants' Motion to Strike Class Action Allegations **[Doc. 7]** should be, and hereby is, **GRANTED**.  Accordingly, the class action allegations contained in Carter's Amended Complaint **[Doc. 3-4]** are hereby **ORDERED STRICKEN**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to counsel of record herein.

**DATED:** August 21, 2012.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

---

Court is unpersuaded that the plethora of individual issues which precluded class certification in *Falls* are not just as compellingly present here.  In fact, at least one individual issue has been added *because* of the *Falls* action, namely: whether a putative class member is entitled to tolling of the applicable statutes of limitation between the filing of the pleading alleging a putative class and the denial of class certification.  *See **Dunn v. City of Chicago***, 231 F.R.D. 367, 374 (N.D. Ill. 2005) ("[O]nly the claims of plaintiffs who would have been included in a putative class are tolled.").  This conclusion is inevitable, whether reached under the pleading requirements of the state courts or the heightened pleading requirements of this Court.